[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
From the credible evidence and admissions in the pleadings, the court, after a February 26, 1991 courtside trial, makes the following findings of fact:
1. On or about February 17, 1988, Seymour Brass, Inc. acting by its then president, Albert Bassett, Jr., entered into a Connecticut Vehicle Retail Installment Contract with Shakers Inc. of Waterbury, Connecticut whereby Seymour Brass Company, Inc. agreed to purchase and accept delivery of a new, 1988 Lincoln Town Car. Plaintiff's Exhibit A.
2. The defendant, Albert Bassett, Jr., signed the retain installment contract as an accommodation party pursuant to section42a-3-415 (1) of the Connecticut General Statutes. Special Defense paragraph 1 and Reply to Special Defenses.[1]
3. Seymour Brass, Inc. agreed to pay a purchase price of $27,611.48 plus a finance charge of $9,240.52, computed at an annual percentage rate of 12%. The total purchase price was $36,852.00, which the corporation obligated itself to pay in sixty monthly installments.
4. This contract, which also provided for reasonable attorneys fees upon default and necessary collection costs, was assigned for value by Shaker's, Inc. to Ford Motor Credit Co. (Ford). CT Page 3677
5. Seymour Brass, Inc. made twelve monthly installment payments due under the contract and then defaulted. Thereafter the auto was repossessed on April 17, 1989, when the corporation voluntarily surrendered it to Ford. Plaintiff's Exhibit B.
6. Ford sold the auto May 24, 1989 at a private sale and then claimed a balance due of $7,337.81 plus attorneys fees of $1,100.67 and costs. Plaintiff's Exhibit H. This loan balance reflects a fair market value of $17,237 for the auto, but that figure does not reflect an additional $750 of value actually in the auto because of extras it contained.
7. The fair market value of the auto is $17,237 plus $750 or $17,987, which leaves a resultant loan balance of $6,587.81.
8. Bassett, himself, received a Notice of Repossession And Right to Redeem or Reinstate. Plaintiff's Exhibit B.
9. On November 15, 1989, while the retail installment contract was in default, Albert Bassett, Jr. through his counsel gave notice to Ford that he had transmitted monies to the corporate defendant, Seymour Brass, Inc., sufficient to pay the arrearage and delinquency under the loan agreement. Defendant's Exhibit 1.
10. Ford, without obtaining the consent of Bassett, after the commencement of this two count law suit, settled its claim, reflected in count 1, with Seymour Brass, Inc. for $3,670. Ford then gave the corporate defendant a general release of the claim arising out of this loan agreement and withdrew count 1. Defendant's Exhibit 2 and Defendant's Exhibit 3.
11. Ford now claims a loan balance of $7,337.81 less a credit of $370 or $3,667.81 plus attorneys fees and costs. However, as indicated above, we find the loan balance to be $2,917.81 to reflect extras in the vehicle, not credited by Ford.
12. Ford, knowing of Bassett's rights of recourse against Seymour Brass, Inc., discharged Seymour Brass, Inc. by virtue of giving it a general release.
 II.
CONCLUSIONS
1. Ford discharged Bassett as an accommodating party from liability under the retail installment sale contract by giving a general release to Seymour Brass, Inc. and thus Bassett is not liable to Ford. Section 42a-3-606 Connecticut General Statutes. CT Page 3678
2. Since Bassett is not liable to Ford, the issues after trial are found for him.
A judgment may enter accordingly.
WILLIAM PATRICK MURRAY, J. A Judge of the Superior Court